I think only two groups of students. One group from Springfield, Delaware County, led by the teacher, Mr. William McRae. Are you here? Okay. And also students from E.M. Stanton. You're described as exceptional eighth graders, led by your teacher, Miss Eileen Heller. Are you here? Well, welcome. And hopefully nothing you see today will discourage you from your interest in the law. But we'll do a before and after poll. You ready to begin, Mr. Zosmer? Yes, sir. Where's Wright? You left him home today? Excuse me, sir? Where's Wright? You left him home today? He was here arguing for you last week. He was, but he probably has important business today. Thanks a lot. Way to start, Zosmer. Instead, in the name of Robert Zosmer, on behalf of the government, and I brought the U.S. Attorney. Not bad, not bad. He's not going to say anything. Along with Zayn Mamdur, on behalf of the government, thank you, Your Honor, for the privilege of appearing before the EnBanc Court once again. And I'd like to reserve five minutes for rebuttal. As Your Honors are aware, it's the government's position that the FBI agents did not need a warrant in order to use the GPS device, notwithstanding the Supreme Court's decision in Jones. We've briefed the reasons why, and I know that this Court today wants us to address just the good faith issue, and so that's what I'll do. So we will assume, for purposes of argument, that we did need a warrant and did not have one. And so then the question is whether the exclusionary rule applies. The rule does not apply in this case because the agents were relying on a very substantial, clear, really unanimous body of precedent that was supported by Supreme Court guidance. And those are the very important facts here. It was conceded at the last oral argument that we had before the panel in this case that the agents had probable cause. They did everything right. They conducted a thorough investigation. They had ample evidence that these gentlemen were engaged in a series of pharmacy burglaries in multiple states. And they were taking the next logical step in the investigation, which was to attach a GPS device. They consulted with a prosecutor to make sure, and they confirmed that it was the view of the Justice Department, as really every actor in the system at that time, that a warrant was not required for short-term surveillance using a GPS device. Had they applied for a warrant, they unquestionably would have received one. So the only reason we are here is because the Supreme Court in Jones, a year and a half after the action in this case, overturned the law, something that these responsible agents could never have seen or anticipated and are not held or not required to anticipate. The notion that use of an electronic tracking device to track a vehicle was not a search for short-term surveillance was accepted by all of the other circuit courts, at least four courts, to address it. It was the view of all prosecutors. But more importantly, and this is the most important thing I will say today, is it was grounded on Supreme Court doctrine. This was not an uncertain area of law. It squarely rested on the Knotts and Caro decisions and on the Katz decision, which held that a search only occurs where there's a reasonable expectation of privacy and that the tracking of a vehicle on public streets does not invade any reasonable expectation of privacy. Jones overturned it. Jones revived a trespass doctrine that the Supreme Court had explicitly and repeatedly said over the course of 45 years was dormant, was not the operative test for purposes of determining whether there was a search. And that is what no agent could anticipate. What we're then required to do is apply the balancing test that the Supreme Court has instructed. We balance the deterrent benefit of the exclusionary rule versus the enormous cost. And the cost in this case is as high as it gets, which is these gentlemen, who by all appearances were engaged in these serial crimes, walk free. This is, as the Supreme Court has said, the heavy cost of the exclusionary rule. Is it worth it in this case? The answer is no, because there's no deterrent impact of deterring agents from following this substantial accepted body of law. Davis is not the end of the word here, but it is very relevant. Davis, of course, involved binding appellant precedent. Our view is that we're about one hair short of that in this case, and I can explain that further in response to your questions. But what Davis says most importantly is that when you do this balancing, there will not be suppression of evidence where the police act with an objectively reasonable good faith belief that their conduct is lawful. These agents have that good faith belief. And because of that, the deterrent benefit is scant while the cost is enormous. This is a classic example based on the recent teachings of the Supreme Court in which the exclusionary rule should not apply. When you read the briefs in this case, the opinions, there's a philosophical debate here, and it's a valid debate, which is what do we want the exclusionary rule to accomplish? You could certainly apply it in every case. Any time the agent turns out to be wrong on the law, you can apply it and that will have some deterrent of impact. It will cause agents, no doubt, to get a warrant every single time. On the other side of this debate is the view that that's not what the Supreme Court calls appreciable deterrence. It's a valid debate, and I think my friend, Ms. Crump, and her allies stated very clearly. The point of the matter is the Supreme Court has resolved this debate. It has set the balancing test. It has explained that in a situation like this, there is not appreciable deterrence. Can I just ask you a basic question? Mr. Katzen was under investigation or suspicion since, what, May of 2010. October, more suspicion. November, significantly more suspicion. And you go and put the GPS device on December 14 after consulting with an USA. Why not just do the simple thing of getting a warrant? It would take hours. Not days. It would take minutes. Because the assumption was that it was not required. There are many police actions. Wait a minute. The assumption was that it was not required. When Leon came down in 1984, I was the district attorney of a Pennsylvania county. I would get telephone calls at home from police officers who wanted to know, should I get a warrant? The default position was always, if you have the time to call me and there are not exigent circumstances, get a warrant. I was about to say, am I an anachronism, but I'm afraid to leave that open for the chief to answer. Is that an anachronistic position? Is the default position, the primary position, no longer get a warrant? Especially whereas here, as you must concede, there is no binding judicial precedent in this. That is still the default position, Your Honor. That's the position that the Justice Department takes, which is when in any doubt, get a warrant. Interesting fact that the agents in Maynard, later to become Jones, got a warrant originally, didn't they? They did. That's not to say that people have not gotten a warrant in this situation. But in our view, and based on the argument I've made here and in the briefs, there was no doubt in this case. Again, we were resting on the United States Supreme Court, in Carroll and in Knox, saying that tracking a vehicle in public is not a search warrant. There was no doubt. Why did they ask the AUSA? Because they're just responsible, and they do that as a matter of course. So it's all, so you go to someone who then picks and chooses among the cases? Or is the test instead the amount of law at the time that may preponderate? What's the limiting principle here of what you're left with is picking and choosing among non-binding authority out there? Well, what we've said is that this is not a difficult case. We all know the questions that will be presented to me, which is, what if you had two cases? What if you had four cases? Where is the line? A line does have to be drawn, and has to be addressed in individual cases. This is not the tough case, where you have a consistent, unanimous body of law that is squarely grounded on Supreme Court bedrock. But you had Maynard intercede. I mean, you had the D.C. Circuit opinion. And didn't that sufficiently muddy the waters to say there's doubt here? No, Your Honor. You didn't know from the outset how long, you knew that battery would last for seven days, I suppose. But you didn't know how long you'd be tracking. Maynard, Your Honor, is factually different, because it involved 28-day surveillance. And Maynard, to some extent, supports the argument that I'm making here, which is that in Maynard... It's been 28 days. You don't need to know that. If I can answer that question in a bit, but first to talk about Maynard. Maynard involved long-term surveillance, but the most important thing is even that court saw it necessary to use only the CATS reasonable expectation of privacy test. So anybody looking at the law would still see on the day that the agents acted here that there was no authority anywhere addressed to the short-term surveillance. Now, the issue has been posed, and Judge Ambrose just referred to it, which is, well, this could have gone on forever. That's not how we evaluate Fourth Amendment actions. We don't know that these agents would not have stopped, or after five, six, seven days, maybe when the battery ran out, and said, you know, now it's time to get a warrant. We've read Maynard. It is very unfair to say that they did not act consistently with Maynard when it never reached that point. It would be analogous to saying... If you get a warrant in the first place, you don't have to do this ex post counting of days or hours determining the longevity of the invasion of privacy or of the use of the GPS device, do you? No, you don't. But the Supreme Court has addressed that in Davis and in other cases, which is that responsible agents not only follow the law and get a warrant when required, but they also follow the law when it allows them to engage in investigative techniques without getting a warrant. That this may be an example. I could clarify the facts a bit. The FBI agents were involved in this, I think, for about a month or two, drawing together what had happened over the previous six months. No question they could have taken the time to go and get a warrant. But in another case, there may not be as much time. That's not this case. It's not. But what I'm saying is the default is not a mandatory rule that you always must get a warrant. The Supreme Court has spoken to that explicitly. But you're saying because there may be exigent circumstances in another case, we should apply the same logic if there were exigent circumstances to allow a warrant here as if there were exigent circumstances. I'm not saying that. What I am saying is that where a warrant is not required, and there are many circumstances under Supreme Court precedent, an agent cannot be faulted and instead should be credited for doing his or her job as quickly and ably as he can. I'm not relying on exigent circumstances. What we do with the modifier binding that's used every time, let's say in this one, when I read Davis again yesterday, the word binding is there to modify precedent. Every time Justice Alito talks about precedent, he uses the word binding, the modifier binding, 14 times in his opinion. Justice Sotomayor makes it very, very clear that she's only going along here because there's binding precedent. And here we don't have binding precedent. You used in your introduction substantial precedent and clear precedent, which means that we should leave it up to the prosecutor and or the agent to determine if the precedent out there is either substantial or clear. And if so, the warrant requirement doesn't exist anymore. The Supreme Court repeatedly said binding precedent because that was the case before it. It never purported to address any other issue. Our position here is that informed by the reasoning of Davis and of Herring and of the other pertinent cases, that we come to the same result here. Now, by the way... One of the cases that you... ...binding out of the opinion there. No, not at all. But I'm looking at the reasoning of the opinion, such as the explanation that an agent acts in good faith, where he believes that he's complying with the law to inform the result here. I should add that the Second and Seventh Circuits have held, since this case was briefed, that we actually had binding precedent here from the Supreme Court. Well, they're relying on Knotts and Caro, which you mentioned earlier.  Knotts and Caro, it seems to me, on the facts and everything that they stand for, look at the technology difference. Look at what the aim of the beeper signal was as opposed to the aim of the GPS. Look at the specific statements in both Knotts and Caro that when you have the opportunity for visual surveillance, there's nothing in addition that the beeper signal is giving you other than what can be done with visual surveillance. That's clearly not the case in the GPS technology. So the reliance on Knotts and Caro I don't get because there are clearly both factual distinctions and distinctions with regard to what justice... It was White and I forget the other justice. But what they were saying the bounds and parameters of their decision was on the one hand and what we have here. So I'm wondering how is it that we can say, in looking at Knotts and Caro, that is a clear indication that what we're doing here doesn't require a warrant. With respect, Your Honor, I don't agree that the facts are materially different. What is the same, and the four circuits before Maynard and Jones, the four circuits that held that GPS did not require a warrant, didn't hesitate. The reasoning isn't even very wrong in looking and seeing that Caro and Knotts are directly applicable. In terms of the facts, in Knotts the court would recall that they used a beeper and they had to stay within some kind of range. And there was about an hour where they lost the signal. And the only way they picked up where the beeper was and where this house was located that they then descended on was because a helicopter picked up the beeper signal. So they had lost visual surveillance. It's the same. So we don't have a material difference. What we have is this powerful, unequivocal statement, two statements in Knotts and Caro. One, tracking a vehicle on public streets is not a search. And two, touching a vehicle that trespasses is not dispositive. So those are the two things that do apply very clearly. There's no material difference. Do you agree with the Second and Seventh that Knotts and Caro are binding precedent? That goes slightly beyond what the government has argued in this case. You've said that the body of circuit law, and I think you've carefully said it, is that it's grounded on Supreme Court decisions. We've said that. And the Second and Seventh Circuit go a bit beyond the position that the United States has taken. I think that Judge Van Antwerpen's analysis in his dissent was very helpful to show the shade that we're dealing with here. He helpfully broke it down, what happened here, into the installation and the search. So with regard to the search, meaning the tracking, I shouldn't call it the search, the installation and the monitoring. With regard to the monitoring, watching Katzen's van go from Philadelphia to Hamburg and rob a Rite Aid, there you did have binding appellate precedent. Knotts and Caro are on point in saying that that monitoring on public streets is not a search. With regard to the installation, the Supreme Court in Knotts and Caro doesn't explicitly address those things, but they do come darn close because they say that a trespass is not dispositive, that a trespass is neither necessary nor sufficient to make out a search. In other words, the agents can't anticipate Jones.  You wanted us to limit the word binding in Davis and simply say, well, that was used in those cases because those were the facts before the court, but it really has no general applicability to this situation, the same way you want us to look at the language in Davis. Because, again, the agent's conduct is condemned here, as to the installation, for only one reason. It's because Jones says that installation was a trespass. Knotts and Caro said, we don't care about a trespass. Holding these agents responsible for such a profound doctrinal shift in the law that no agent or prosecutor could anticipate is not just an absence of good faith. It's unfair. It is not what the exclusionary rule is designed to do. It deters nothing. Isn't Davis somewhat distinguishable because there's a little bit of a gray area as to how to read Belton, so that if you read it narrowly, I think Gant makes this clear, so that there was at least a little bit of an issue, but the way it had been read in Davis by the circuit court, they had to say it was binding, even though there was a question before. I find them a little bit distinguishable. Would you agree? I would agree, Your Honor. But in the end, the Supreme Court said, all we have to reach is binding appellate precedent because it happens  And in the Eleventh Circuit, they had binding precedent defining Belton in a very specific way. But how is Belton any more binding than Knotts and Caro? Excuse me, sir? How is Belton any more binding than Knotts and Caro? Belton just basically said you can search a vehicle incident to a lawful stop. It didn't say you had to do it without a warrant. I'm trying to find why you would distinguish Belton from Knotts and Caro. Well, Belton, as interpreted by the Eleventh Circuit, which is what they were looking at in Davis, said that you can search a vehicle even after the person has been removed and detained. You can't. You don't have to. You can't. You can, and you don't need a warrant for that. Gant explicitly overturns that. If that's the reading of Belton, which the Eleventh Circuit had held, Gant says no. And so, therefore, you do have the Supreme Court overturning the binding precedent in the Eleventh Circuit. What I've suggested here is that it's not binding in that we didn't have an explicit Third Circuit decision in the way we had an explicit Eleventh Circuit decision about Belton. But why is a Third Circuit decision more binding than a Supreme Court decision? Well, it's not. If the Supreme Court had addressed the installation of a GPS device before, I could certainly say that was binding. I'm making this really hairline distinction in that we didn't have an explicit Third Circuit or Supreme Court case on the conduct here, but we were so close that our position is that when you then read all about good faith and what it means, read about the balancing test, that the conclusion has to be that in our situation, the exclusionary rule can't be applied. Well, here's what I don't understand about the good faith position that you have. So when you look at good faith in the various iterations that it's had from the Supreme Court, there are probably two things that you can say. Generally speaking, it's narrow, and the particular action, whatever it's been, has been specifically authorized, whether it's from a neutral magistrate or the like. You look at all the cases, whether it's Arizona v. Evans, Herring, Leon, Kroll, Shepard, Davis, all of them, you can do that. Here, it appears to me that what you're asking us to do is to make a decision that parts from that. The implications of the decision or rulemaking that you seek would be neither narrow and certainly not specifically authorized. Your Honor, what we ask for is an application of what the Supreme Court has explained, and the Supreme Court itself has said. You're asking for an extension of good faith doctrine, as the Supreme Court has expressed, aren't you? I mean, where can you derive from Leon, Kroll, Evans, Herring, Davis anything akin to what you are doing here? All of those cases, as I read them, and please tell me if I'm wrong, excused police activity because they were relying on some legal authority, a decision, a statute, a warrant, some clerical error, something emanating from or binding them from within their own jurisdiction. They're the limits of those cases, as I read them. If I'm wrong, please explain to me why you're not asking for an extension of those authorities. No doubt we are asking for what I've described as a very, very slight extension of Davis, based on the reasoning explained by the Supreme Court in explaining when the exclusionary rule applies. Slight extension if, as you've at least implicitly assumed, there's not much difference between GPS and beepers. The technology really doesn't enter into this. It's the reasoning that you've referred to in Knotts and Carroll that really matters. We do. And what I'm also saying, though, Your Honor, Your Honor says they're not relying on law as a question to make. They are relying on law. They're relying on a unanimous legal view resting on these very important Supreme Court cases in Carroll and Knotts that are significantly undermined, if not overturned. Can I ask you about that unanimous view? Because going back to Maynard, it seemed to me that Maynard concluded that the GPS device was so intrusive, among other statements that it made, that it required a warrant. And you said that the law was settled, but I thought that that case essentially unsettled the law. And I would argue in favor of the police getting a warrant in this case. Well, here's what's so interesting, and I think Jones supports us on this as well, is that again, Maynard applies the reasonable expectation of privacy test and decides that there's a search not because use of a GPS is a search. That is not, I think, a fair reading of Maynard. It finds it's a search because of what it calls the mosaic. That when you follow somebody every minute, 24 hours a day, for 28 days, you learn a mosaic of their lives that is an invasion of privacy. And thus, under Katz, amounts to a search. The agents here had never done that. But the point is that the use of a GPS device was so intrusive that law enforcement officials should get a warrant. Well, again. It seemed to me that that finding unsettled the waters that you say were in fact settled. But again, Maynard reaches its conclusion only on the basis of facts that clearly distinguish this case. And what's most telling is that when it comes to the Supreme Court in Jones, Jones affirms Maynard by rejecting its reasoning. Jones does not rely on the same reasonable expectation of facts that distinguish our case. Instead, the majority in Jones reaches its conclusion and brings us all here today by just overturning Fourth Amendment understanding altogether. And saying reasonable expectation of privacy is no longer the exclusive test. That's what's so powerful here. Go ahead. It seems to me if Knotts and Caro aren't binding and we don't have any Third Circuit law, I mean, we're sitting as a non-bond panel. What's the rule? Is it 4-1? Is it 3-1? Is it 4-0? We've got a Maynard case. What is a law enforcement officer supposed to take out of this? What would you propose that we do? Well, the Supreme Court has said this balancing has to be done on a case-by-case basis. The rule is that we have to see did an objectively reasonable officer believe that his conduct was lawful. In this case, I have no doubt. Tougher cases will come along. If there were just two district court cases out there, I'm not here today. If there's a substantial body of circuits but no Supreme Court guidance, much tougher case. And that's not where we are. But that's what he's suggesting to you. He's suggesting that let's put aside for the moment Knotts and Caro, right? So your reliance on Knotts and Caro, we're suggesting in our questioning, changes the landscape. With that changed landscape now, what's the rule? If we take away Knotts and Caro, my position is undermined. There's no doubt. I have four circuits that have addressed something apparently without Knotts and Caro, without any Supreme Court guidance on what constitutes a search and what doesn't. That puts us in that situation, I would say, unquestionably get a warrant. That's not our case. Mr. Zeismer, am I correct that Justice Department policy, or even the manual, say that if an agent or agents have question as to whether or not a warrant is required, they are to seek a legal opinion or guidance from an assistant United States attorney? Well, that is absolutely the practice. I haven't looked at the manuals recently, but that is the practice. And that's what happened here. And that's what happened. So there was some doubt on the part of the agents. Well, not doubt. It was following good procedure. And the Supreme Court has said that's relevant in determining good faith. That is a factor that has to be considered. I don't think the defense disputes that either. Well, in saying that your position would be undermined if we put Knotts and Caro aside, that's what we're trying to grapple with. In looking at that dynamic, the officers going to the AUSA, what's the result of that exchange? If it's 2-2, 3-2, 4-1, that's what we're grappling with. Because it would appear that the rule you're seeking is to give our imprimatur to non-binding appellate precedent, which at least seems problematic. And that's what we're grappling with. So help us with that. You're right, Sal, to answer that question. Thank you. Again, if you pull out the pieces here, if you take away Knotts and Caro, take out the consultation with the prosecutor, the ground disappears under my feet. There's no doubt about it. But we have to address the case before it, and the court is compelled to do that by the Supreme Court to address what we have. And what we have, even if it wasn't a binding Third Circuit decision, what we have here was an explicit uniform understanding based on Fourth Amendment doctrine that was fundamentally changed after the fact. That's what's so different here. That's why we've said, I think very candidly, tougher cases will come along. And I'm not trying to suggest they won't. This is not one of those tough cases. Thank you. Judges in Van Antwerpen or Jordan, any questions at all? No questions. Nothing from me, Chief. Thank you. I do want to just commend, I think lesser advocates would not have done this. When asked directly if you were advocating an extension of Davis, you conceded you were advocating a slight extension of Davis. I think a lesser advocate would have said, no, we're not advocating for an extension of Davis. I want to really commend you on your candor there. The fact you haven't bothered to read the U.S. Attorney's Manual of Mr. Zeminger, I'm sure I'll deal with that. But you must quote him. This quote? He probably has read the U.S. Attorney's Manual. Good morning, Your Honors, and may it please the Court. I am Katherine Crump on behalf of Appellees. This Court should reject application of the good-faith exception in this case. The good-faith exception only applies when there is a binding appellate precedent, and as the government concedes, there was no such precedent available to the government in this case. Applying the good-faith exception to non-binding case law would flatly contradict the Supreme Court's decision in Davis. Davis held that searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule, and then explicitly assumed that the exclusionary rule would still apply where no such precedent existed. This view of Davis is consistent with the Supreme Court's other good-faith cases. The Supreme Court has held the exception to cover only situations where law enforcement personnel have acted in objectively reasonable reliance on some source of authority or information that specifically authorizes their actions, such as a later invalidated warrant, a subsequently overturned statute, or an error in a police or court-maintained database. The Supreme Court has already rejected the argument that Knotts and Caro were binding with respect to GPS tracking. In Jones, both Justices Scalia and Sotomayor stated that it was not necessary to overrule Knotts or Caro to reach the conclusion that GPS tracking constituted a search. Also, Knotts expressly reserved the question of whether 24-hour dragnet-type law enforcement practices would receive a different constitutional rule. And further, both cases involved the substantially more primitive beeper technology, and both involved a consensual placement of the beeper in a container, not an unconsented-to physical intrusion into a defendant's property interest. When the lack of any Supreme Court authority is combined with the lack of any Third Circuit authority, it is clear that there are no grounds for invocation of the good-faith exception. The government argues that the good-faith exception should be extended to settled persuasive case law, but that approach would be difficult for both courts and law enforcement agents to administer. How many circuits would need to rule before a particular question was considered settled? Is a minority of circuits enough? Are federal court decisions even needed, or is state court law relevant? What about three district court decisions going the same way in a circuit that hasn't reached an issue? The government's position would require prosecutors and law enforcement agents to sort out these questions on the fly and would require a large expenditure of judicial resources to sort out the correctness of those determinations after the fact. Regardless, no such settled body of case law existed here. When law enforcement acted, only four circuit courts had opined on warrantless GPS tracking, and this court was silent on the issue. And the most recent decision available to agents at that time, the D.C. Circus decision in Maynard, held that the practice could be unconstitutional. It should have been clear to the government that the legal landscape was unsettled, yet in this case the assistant U.S. attorney affirmatively instructed the agent to proceed without a GPS, without a warrant anyway. This is conduct that can and should be deterred. The government's position that reliance on the opinion of an assistant U.S. attorney can constitute good faith is deeply problematic. An assistant U.S. attorney is a member of the investigative team, not the type of neutral objective source which has served for the basis of the good faith exception previously. In this case, the U.S. attorney was either unaware of the unsettled legal landscape or knew about it and counseled against getting a warrant anyway. Allowing assistant U.S. attorneys to provide an additional layer of insulation against judicial scrutiny incentivizes them to engage in overly aggressive readings of non-binding authority. The Supreme Court has stressed that executive officers should err on the side of constitutional behavior. It has even issued a particular guidance of relevance to this case. In a doubtful or marginal case, the government should obtain a warrant. The government contends that it had probable cause and therefore could easily have done so here. Moreover, the risk to privacy of rapid technological change counsels against applying Davis to the facts of this case. Under the government's proposal, it would be entitled to use an invasive new surveillance technology unless and until the Supreme Court said that it was not. Yet the Supreme Court has recognized in cases such as Kylo that limits must be placed on the power of technology to erode privacy. Allowing the government to rely on beeper cases to justify 24-hour GPS surveillance would be an unjustified intrusion on Americans' privacy. What do we do with the language in Davis? You heard me asking Mr. Zalzman about the use of the word binding. What about the use of language like grossly negligent and reckless when they talk about when to apply the exclusionary rule? I have two responses to that. First, the Supreme Court's decision in Davis contemplated that there would still be circuits in which the decisions hadn't been reached and that the exclusionary rule would still be available. This was in response to the argument that its decision would stymie development of the law, and this it presented as an avenue forward. Second, Justice Sotomayor's warning in the concurrence that the situation where there was no binding precedent would raise a different concern I think also clearly limited the scope of the Davis holding. In Knotts, the Supreme Court said that a person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements and that nothing in the Fourth Amendment prohibits the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them, basically saying there is no reasonable expectation of privacy in your movements. How is that not binding precedent that applies strictly to this case? That's not binding precedent because it's not the only thing the Supreme Court said in its Knotts decision. In Knotts, the Supreme Court also had to address a defense argument that the surveillance could prove quite unlimited, and in response it said that 24-hour dragnet-type surveillance could trigger different constitutional principles. Under that circumstance, that question was left open, and therefore the case is not binding on – But that was clearly dicta, wasn't it? That limited the court's – the scope of the court's holding. I don't think it can be dismissed as dicta because it was – I mean, that issue was not before the court in Knotts, so it seems to me it has to be dicta. Well, it depends how broadly or narrowly you want to read the decision, but I think circuit courts such as Maynard looked at that and saw that as an integral part of the court's holding there and therefore reached a different result. No, it's dicta. Should we ignore it? We have cases that talk about how this court should interpret and respond to dicta, if it is dicta. No, of course it shouldn't be ignored. Thank you. This court has said that it weighs heavily any statements by the Supreme Court, and so this is just such a statement. What would give an officer on the spot, if you will, pause as to what to do in this situation? What is there that – whereby he should say, oh, gee, this really is a search, this really is a search, when Knotts says specifically because no reasonable expectation of privacy, it is not a search? Well, we've talked about Knotts. The other case which should potentially give an officer a pause under the government's theory is the decision in Maynard. Maynard issued four months before the attachment of the GPS device in this case specifically held that GPS tracking can implicate different constitutional principles. That was a 28-day. That was based upon length of time and the invasiveness and the reasonable expectation of privacy. You would not reasonably expect someone to be traveling, looking at you, observing you for 28 days. Isn't that really what Maynard was about? Maynard didn't say that any surveillance less than 28 days wouldn't be a search. To be sure, it dealt with prolonged surveillance. But the agents in this case didn't have a specific length of time in mind that they were going to use the GPS tracker. And so the best way to look at this is to look at the indefinite nature of that. If that doesn't persuade you, another relevant factor – The potential for indefinite use, is that what you're referring to? Yes, Your Honor. But in this case, the purpose of this surveillance technique was to figure out whether a car was going to a public place, that is, a pharmacy. So this is not a circumstance, under the facts of this case, where the investigation is trying to track who they're interacting with and where maybe secret locations are. But in fact, it sounded like, from the recitation of the facts, the agents were hopeful to find them in the course of acting out in a public place. Doesn't that also make it different than Maynard, besides the shortness, but also the purpose? The tracking in Maynard also involved movements in a public place, as, of course, was the case in Jones. So I don't think that's dispositive. In this case, not only did the agents not have a predetermined length of time they were going to track for, but the battery power on the device was set to last for a week, a length of time that the D.C. Circuit in Maynard specifically mentioned was well beyond the practical capacity of agents. Now, the D.C. Help me deal with what really happened when we're dealing with issues such as this, how long it really went on for. In this case, I believe it was two days, and it all involved public locations. Isn't that true? It did involve public location, and the tracking was approximately 48 hours. I think it's useful to separate out the question of whether the Fourth Amendment was violated from the standards that apply when determining whether the good faith exception applies. If the question this Court was considering right now was whether the Fourth Amendment was violated, then I would agree that the two-day length of time was the relevant factor. But since we're in good faith land, the relevant question is what the agents' objective plans were. Furthermore, I wouldn't concede that two days was not prolonged tracking. Two days of tracking is well beyond what an officer could accomplish in a typical shift. You know, it's very hard to ignore the conduct that the Katzins were involved in, or at least that they're accused of being involved in. If we were to reject the good faith exception in this case, what do we accomplish? This Court would accomplish substantial deterrence of the type of law enforcement conduct that occurred here. What here exactly is grossly negligent in what they did? It was constitutionally reckless, given the state of the law, for the agents not to obtain a warrant. You had two cases from the United States Supreme Court. They are generally binding authority in a particular circuit, are they not? To be sure. The Supreme Court case is always binding on a circuit court. Why weren't these binding? What about this? Is it because they were using a GPS device rather than an old-fashioned technological beeper? Is that what the real difference is? There are a number of reasons. First of all, they're not binding because they didn't address prolonged surveillance of the type that occurred here. It was two days. I think two days is prolonged. It's well beyond what a department could accomplish without a significant expenditure of officer resources, well beyond what a typical officer could accomplish. Okay, okay. What else? In addition, I do think the technology makes a difference. Look, we've had one, two, three, four, five circuits. Every circuit that has addressed that has said that the technological differences between beepers and GPS is irrelevant for the purposes of a good-faith analysis, correct? I actually don't think that's correct. I don't think many circuits do. Didn't U.S. Smith say that in the 11th Circuit? Smith did say that. How about U.S. versus Sparks in the 1st Circuit? Didn't that say that? Sparks relied on an amalgam of its own circuit precedent dealing with beepers, which was broader than the Caro and Knott's decision to reach that conclusion. How about U.S. versus Anders in the 5th Circuit? Didn't that case say that? Yes, I believe that circuit did. How about U.S. versus Pindar-Moreno? Didn't that also say that in the 9th Circuit? No, Your Honor. Respectfully, I disagree with that. The 9th Circuit had a prior GPS decision, which served as the basis in that case. But they ultimately came down and said it was irrelevant for the purposes of good-faith analysis, right? That's not how I remember that decision, Your Honor. How about Fisher in the 6th Circuit? All of these circuits dealt with beeper cases. Many of them all had their own in-circuit beeper cases, which often swept more broadly than the Supreme Court's decision. You named me. You just said you didn't think that statement I made was correct. Can you name a particular case in any circuit that said the technological differences between beepers and GPS is relevant for the purposes of good-faith analysis? I'm talking about the technological difference. I think in many circuits the courts just didn't simply reach that issue because their prior beeper cases swept more broadly than the Supreme Court's language. So as I was mentioning in the Sparks case, that court relied on its prior decision in Moore, which simply said that the physical intrusion was irrelevant in a way that wasn't the case here. But in any event, What was grossly negligent? What was grossly negligent about the agent's action was the fact that they decided, in a case where they had no circuit court that was binding, no circuit court precedent that was binding, no Supreme Court precedent that was binding, in a circumstance where there was case law indicating that in cases of doubt you ought to obtain a warrant, and they decided not to do that anyway. And that's particularly culpable conduct given the fact that the person isn't I know you want to attribute... You say that Maynard is the case that should have given them pause. Correct? Maynard. You were asked that question. You said Maynard was the case that should have given the authorities pause. That's correct, Your Honor. Okay, a D.C. Circuit case. Now, generally, the D.C. Circuit is thought of very highly across the country. Let's move Maynard to the Ninth Circuit. Let's say that Maynard had been decided... No, I'm serious. Let's say Maynard... No one had written it. I'm not going to say who wrote it. Let's say it was moved to the Ninth Circuit. Okay. Would have that given it the same... Should have that given the authorities the same pause? Well, as a former Ninth Circuit clerk, I guess I'm going to stick up for the circuit. All right, you're allowed to, but I want you to step back a second. I want you to step back a second. Do you think that that should have given law enforcement, you know, reasonably objective, objectively reasonable officers, should have that given them pause? Yes, but I think in some sense we've gotten a little off track and are asking the wrong question. I agree with that. I agree with that. But the reason for my question was that you said that Maynard should have provided pause. Okay. Well, then I appreciate the clarification. Let me return to... Why don't you clarify? Go ahead. You wanted to clarify. Yes. And I think the relevant test is was there binding appellate practice that authorized, binding appellate precedent that authorized the agent's action here. All right. You've done a good job explaining why in several circuits they had internal circuit precedents that made it different than our case where we have a tabula rasa. So let's assume for a minute we agree with that. How do you still get around the fact that Knott says a person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another? You've already conceded that Knott's is binding precedent. It's a Supreme Court case. When did that statement become invalid? I think that statement needs to be read within the context of the opinion in which it arose. Knott's involved using a beeper to track someone for a single trip from the place where the person purchased chemicals to a cabin. All right. Then give me any other scenario in which the Supreme Court said that a person has a reasonable expectation of privacy in the transportation in the vehicle from one place to another. The Supreme Court hasn't said that. So then why can't the police rely on the statement that I just read? Because Knott's decision was cabined by its restrictions on 24-hour dragnet surveillance. And moreover, the question is... Where is it cabined? Where is the limiting language in the majority in Knott's? Where does it say it doesn't apply? I don't have the case in front of me. I could grab it if Your Honor wanted. But in the case, the court responds to an argument that the defense made that if it allowed warrantless beeper tracking, that people could be tracked for 24 hours for days on end. And the Supreme Court specifically says, you know, if that issue comes before us in the future where there's 24-hour dragnet type surveillance... Did the police in this case ask for the opportunity to track your client for days on end or Mr. Katzen for days on end? That's what they did. I thought they couldn't have been more than seven days at the time they applied. Well, I think that constitutes prolonged tracking because it would take an extraordinary amount of law enforcement resources to ever be able to duplicate that. Where has the court said that? Where has the court said that seven days would be prolonged tracking? The D.C. Circuit in Maynard did mention that a week would be beyond the capacity of a law enforcement agency without extraordinary expenditure of resources. But regardless, I think the question is, you know, under our theory, the question is, is there binding appellate precedent and specifically authorizing the agent's actions? And in the absence of case law... Does it have to be a holding or is this statement enough? Because clearly what I read to you from Knott's is not a holding. So if we were dealing with an AEDPA case, for example, we know that you'd be correct on that because this is not a holding of the Supreme Court. It's just a statement. Yeah, I think... Is it your argument that this is akin to AEDPA where the police can only act if there's a holding of the United States Supreme Court or a Circuit Court of Appeals directly on point that authorizes the conduct? I think the question is, is there a Supreme Court precedent which specifically authorizes what the agents did here? And as we read Knott's, there was no such precedent, either under Knott's or Caro. So there would have to be a Supreme Court case that was a GPS case for seven days. It would have to be factually on all fours for the police to be able to do what they did here without a warrant. I don't know that it necessarily has to be factually identical, but I think it needs to be closer than the Knott's case, which involved a substantially more primitive tracking technology. The tracking technology in that case was range-limited. The agents were still needed to be able to follow the car in order to track its movements. And so for that reason, they would still need to expend a great deal of resources. What about the Second Circuit? The Second Circuit seemed to think the issue was very well settled, that Knott's and Caro indeed authorized the good-faith exception. The Second Circuit did reach that conclusion wrongly, in my view, and it is the only court with which this court would have to disagree to reach that conclusion. Who should be making these kinds of intellectual calisthenics? Should it be an assistant U.S. attorney who is asked whether or not a warrant should be obtained in the absence of vexation circumstances, or should it be a neutral, detached magistrate? Isn't that the issue? If you sit around playing mind games all day long, the issue is, does the Fourth Amendment require that these kinds of mind games be played out before a magistrate or an assistant U.S. attorney?  Because they involve these types of complex calculations. And it's important to remember that an assistant U.S. attorney is an adjunct to the law enforcement team. Their conduct is part of the conduct at which the deterrence remedy is aimed. Ms. Crump, let me return you to the broader regions of what you referred to earlier as good-faith land. There have been a few terms used that I would like to explore and perhaps also hopefully hear from Mr. Zosmer in rebuttal about. First of all, it's good faith, which I seem to recall, and I can't cite it right now. The Supreme Court has admitted is not the most precise of terms to describe the doctrine that has been derived therefrom. Yes, that was Chief Justice Roberts of the Haring Opinion. Thank you very much. So if good faith gets law enforcement by these situations without having a warrant, what is the obverse? What is required? And I think one of Judge Van Antwerpen's questions touched on this when he used the term grossly negligent. If it's not good faith, what are we looking for? Are we looking for bad faith? I don't think a case has said that. But some of the cases have discussed culpability. So if culpability is the test, what is it that we're looking for here? And what measure of culpability has taken place where, as here, law enforcement has acted against the backdrop of case law that Mr. Zosmer and others have described, but where they quite clearly had plenty of opportunity to obtain a warrant and did not? What does culpability mean? Does it mean grossly negligent? I don't think it means only that. I think that there was a, in fact, several terms used. Help me with this, please. Gross negligence is one term. Recklessness is another. And even when primary police conduct is involved, the Supreme Court has cabined off isolated or nonrecurring negligence  Do you think this was grossly negligent? Yes, Your Honor. I think the agent's conduct was constitutionally culpable here. But it's important to remember that this is not a subjective test. I think that's one of the reasons this language is confusing. You can agree with the district court that these agents were trying to do the right thing and yet still hold that the good faith exception doesn't apply because it is an objective test. But Ms. Crump, let me ask you a question, if I might, Ms. Crump. You just noted that this is an objective test. In the very place where the U.S. Supreme Court makes that point in the Haring decision, Chief Justice Roberts says, We have already held that our good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal in light of all the circumstances. So under that objective test, the one that you acknowledge we have to embrace, what is it here where you can say a reasonable officer, in light of Karo and Knotts and Katz and multiple circuit court opinions, that this was not a search, should have known that a placement of the GPS in the tracking was illegal? Not even the government argues for a qualified immunity-like standard here. Even under the government's test, you need subtle persuasive case law. And I would say that even if you accept that as the starting point, the fact of the Maynard decision combined with the reservation in Knotts is enough to satisfy... I'm just quoting to you from what the United States Supreme Court said in Haring. What is it here that would make a reasonably well-trained officer know that the search was illegal? That's the test they put. Have they misstated the test in Haring? No, Your Honor. Of course not. But I think we can all agree that the Supreme Court has phrased the test in a variety of different ways. And in the Supreme Court's most recent decision, the Davis case, the Supreme Court made clear that the sole question whether the exclusionary rule ought to apply is whether or not it achieves a significant deterrent effect, which is, of course, balanced against the cost to justice. And I think when you look at this case, the rule the government is proposing, a sort of freewheeling accounting of different circuit authorities, is so unadministrable that sticking to the line that Davis specifically set out, focusing on binding appellate precedent, is the more sound way to go. Could we focus on one other part of Haring for just a second, just so we can know what this case isn't about? There's nothing in the record about recurring or systemic negligence by these law enforcement agents, right? No, although the government conceded at oral argument that they acted pursuant to a specific policy governing GPS use. What if there was a rule that said you look either to your circuit or you look to the Supreme Court? If there's a rule that allows you to go forward, you're okay. If there's not a rule that prohibits you, you're okay. That would be a straightforward and easily administrable test. I think it is vastly easier to determine what two courts have done than to try to engage in the ad hoc balancing test the government proposes. Under that test, everybody acknowledges there was no decision in the Third Circuit that would have said you could have done this. But certainly, an objectively reasonable police officer in reading Knotts and Caro would not have found that he couldn't install this GPS. Yeah, I think I have basically two arguments in that point. The reservation in Knotts of the 24-hour nature of the surveillance. And you'd say also the distinction between the technologies. The distinction between the technology, the lack of, the need in this case to physically intrude on a privacy, on a property interest that didn't take place. You have to acknowledge, though, that even under Knotts and Caro, it doesn't say that you can't affix the GPS device without a warrant. That's true, but it doesn't say that you can. And that's the relevant factor here. Ms. Crum, earlier you said something that struck me. You said that the opinion in Davis is limited by Justice Sotomayor's concurring opinion. Is that right? Yes, Your Honor. Is there any authority for the proposition that a concurring opinion of one justice limits the language of the majority opinion, which is joined by six other justices? My word choice was imprecise. I didn't mean that it limited the opinion by legal force. I simply meant that the majority opinion should be read in light of the cautions that Justice Sotomayor gave against extending the doctrine into new context. And what import do those cautions have? Well, I think they're persuasive. She specifically cites the Johnson opinion and the need to err on the side of constitutional behavior and also the Eleventh Circuit decision below in Davis, suggesting that if you're going to extend the good-faith doctrine to encompass judicial precedent, it needs to be binding because otherwise you'll go against the admonishment in Johnson. So you're suggesting they may have some force for us here because, as the government has even suggested, this would be at least a slight extension of existing precedent, specifically Davis. Is that right? Yes, Your Honor. The Supreme Court in Knotts talked about the 24-7 or drag net, if you will allow me, and said there's time enough to determine whether different constitutional principles may be applicable. So wouldn't you agree that in Knotts, even in Knotts, they did not believe that the Fourth Amendment would curtail extensive time searches such as this or use of Bieber such as this? Wouldn't you agree it's not a Fourth Amendment principle that would limit it? With respect, I disagree with that. I think by different constitutional principles, the Court was specifically referencing the principles set out in that case, which authorized the particular Bieber use there. I don't think they meant to cabin off the application of the Fourth Amendment entirely. Well, the end of that paragraph, we've never equated police efficiency with unconstitutionality and we decline to do so now. They're viewing it really as a matter of efficiency, are they not? May I respond? I see my time is up. May I respond? Go ahead. Okay. There are certainly circumstances in which the fact that officers have engaged in technological enhancements of their senses, that that's amounted to a Fourth Amendment violation, and I would just refer you to the Kyla decision. Thank you, Your Honor. Are there any questions on the phone at all? I have no further questions. No. No, thank you. Your Honor, just two points I'd like to address if I have the time. One, regarding the length of time that this was planned for, it is just unfair to judge this case based on what might have happened. This was a two-day surveillance. Ms. Crump calls that extraordinary. You couldn't do it. Was it a two-day surveillance? And it's not the intent. To say intent, I would suggest, Your Honor, would be the same as saying, well, they lawfully knocked on the door, but I know what those agents were thinking. Well, you weren't with a seven-day battery, so they were prepared to go seven days. It happened to go two days. They were. And seven days would not have gotten us into Maynard. No, I understand your distinction between Maynard 28 and seven, but it's not 228. It's 728. But it was two days, and I think it's unfair to judge it. But seven is the number for good faith. It has to be. What? Seven has to be the number for purposes of good faith analysis, because the good faith analysis, by your own argument, is a snapshot in time at the time the agents acted. And at the time the agents acted, they put a seven-day GPS with a seven-day battery in the car. I think you can infer from the record that they intended seven days and that that would be fair and that would still be good faith. It's not Maynard. But I still think it's only fair to judge them based on what they did, which is they surveilled for two days, and that is not extreme. Can you address, please, what was objectively reasonable on the installation side of the GPS device? You said there's a distinction between installation and monitoring. Sure. Thank you, Your Honor. On the installation side, the Supreme Court had said over and over that a trespass is neither necessary nor sufficient for a Fourth Amendment search. And then the Supreme Court comes along later in Jones and says, all you need is a trespass. That's what's so striking about this case and about the change in the law that the agents can foresee. And while we're criticizing the agents, they're being called reckless here, what about four justices of the United States Supreme Court who even in Jones are still saying that we should only abide by our reasonable explication of privacy test? So we're condemning now FBI agents for something that four U.S. Supreme Court justices would not agree with. I think we're condemning them. No, the FBI agents did what they're supposed to do. They asked somebody. Well, they did. They just didn't ask a neutral person. But to get to the really important issue here, which I think Judge McKee's question, Judge Smith's question is really focused on, he said if there's a mind game, should it be resolved by the AUSA? And Judge Smith said, what exactly are we looking for here? That's what's defined in the Supreme Court cases. It's not a simple question of should they have consulted or if they had the slightest smidgen of doubt, should they instead go to the neutral magistrate? The Supreme Court has taken us away from that. The rule is not, and Herring addresses this explicitly, the rule is not if there's any measurable deterrence we can get by requiring consultation with the magistrate every time, that is not enough for application of the exclusionary rule. Instead, we have to balance the culpability of the agents in this case against the massive cost of society. You mentioned cost earlier in the cost-benefit dichotomy. A question, if you received the grant of the relief that you seek, that wouldn't be the end of this prosecution. The GPS evidence, I'm sorry, if you didn't, I'm sorry, if there was a ruling against you, right, and the GPS technology evidence was removed, right, there'd still be a prosecution. No, our judgment is there would not. We would have no proof that we can admit that these people went to that location. And the seizure itself of the fruits of the crime would be inadmissible. We don't think there'd be a case. Mr. Sussman, let me ask you an analytical question, and perhaps it's a question the answer to which I should already know. I understand that what we're talking about, Ray, the exclusionary rule, is a balancing test, right? I mean, you weigh the policy implications against the conduct that has occurred. But with respect to the conduct itself, here are conduct that either does or does not meet the good faith test. Do we have some separate test or equation? I mean, if I recall correctly, and again, I may not, but I think Judge Van Antwerpen, in the original iteration of this case, had referred to totality of the circumstances at some point. Are we looking at a totality of the circumstances measure here as we go about trying to determine what good faith or bad faith or culpability is before we then move on to the balancing test? Well, I think you look at all the circumstances, but I think the most important thing here is the Herring test. Herring says that if conduct of the officers is deliberately wrong or reckless or grossly negligent, then the application of the exclusionary rule has a sufficient deterrent effect. So it's automatic? That balance has been struck, that's right. But instead, if the agents acted with the belief that their conduct was lawful, or the other formulation, as Judge Jordan said, was not knowing that their conduct was unlawful, then the exclusionary rule, the Supreme Court says, does not pay its way. And that's the fundamental principle here. Thank you very much. Thank you very much. To the students, you have just seen an excellent oral argument. They're not all like this. Ms. Crump was absolutely phenomenal. I've not had the pleasure of having you appear before me. I hope you do it again. Mr. Zosner was his usual brilliant self. So even if you were to go to the Supreme Court and see oral arguments, you're not going to see very often the quality of argument that you saw today. With the possible exception tomorrow when you argue the case, there may be some equal brilliance. But I want to commend both counsel for just a wonderful.